No. 29,722.

The Concordia-Arrow Flying Service Corporation and D. E. Bolman, *Plaintiffs,* v. The City of Concordia and P. F. Edquist, Mayor, et al., *Defendants.*

(289 Pac. 955.)

Opinion filed July 10, 1930.

*Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the plaintiffs. *Charles A. Walsh, Jr.,* of Concordia, of counsel.

*Clyde L. Short,* of Concordia, for the defendants.

The opinion of the court was delivered by

BURCH, J.: The action is one to require the mayor of the city of Concordia to execute a contract and lease relating to establishment of an airport, pursuant to a resolution and an ordinance of the city. No objection is made to the form or content of the instrument to be executed, and the mayor declines to proceed in the matter for the reason that, in his opinion, chapter 5 of the Laws of 1929, relating to municipal airports, is unconstitutional. The resolution and ordinance follow:

"RESOLUTION.

"WHEREAS, The governing body of the city of Concordia, Kan., believes the public safety, service and welfare can be advanced by the city leasing a complete and approved airport within three miles of the city of Concordia.

"AND WHEREAS, D. E. Bolman, of said city, has in writing proposed to the governing body that he will acquire by lease ground sufficient to maintain an approved and complete airport within three miles of said city, and will improve and complete said site as and for an approved airport, and will lease the same to said city for a term of five years at the annual rental of one-half of a mill of the taxable property of the city of Concordia, said rental to be payable semiannually.

"AND WHEREAS, The governing body deems it not advisable for said city to operate said airport when so acquired by lease from the said D. E. Bolman.

"AND WHEREAS, As a part of the proposal of the said D. E. Bolman, the Concordia-Arrow Flying Service Corporation proposes to, for a period of five years, operate and maintain said airport as an approved airport, and pay to the city of Concordia, Kan., as yearly rental, the sum of one dollar per annum:

*"Now, therefore, be it resolved by the governing body of the city of Concordia, Cloud County, Kansas:*

"That the city of Concordia, Cloud county, Kansas, by lease, acquire from D. E. Bolman an approved airport not more than three miles from said city, at the annual rental of one-half of one mill of the assessed valuation of the taxable property of Concordia, said airport to be leased for a period of five years.

"That the mayor and city clerk be directed to enter into a lease with D. E. Bolman for the leasing of said approved airport to the city of Concordia, Cloud county, Kansas, for a period of five years, at the annual rental herein provided for, payable semiannually, the first installment of rent to be due and payable on December 15, 1930, and at like intervals each six months thereafter during the period of said lease.

"That the mayor and city clerk be directed to enter into a release of said approved airport with the Concordia-Arrow Flying Service Corporation for a term of five years, at the annual rental of one dollar per year.

*"Be it further resolved,* That the city at large sustain the cost of leasing said airport from D. E. Bolman, and that the proper city officials levy annually, at the time of making the levy for other taxes, a tax sufficient to pay the rental

on said airport, as authorized by chapter 5 of the Session Laws of Kansas for 1929.

"Passed by the council and approved by the mayor this 7th day of April, 1930. P. F. EDQUIST, *Mayor.*

"Attest: E. J. ALEXANDER, *City Clerk.*"

"ORDINANCE No. 1002.

"AN ORDINANCE authorizing the city of Concordia, Cloud county, Kansas, to acquire by lease an airport, and providing for the payment of the annual rental therefor.

"WHEREAS, In pursuance of proceedings had and taken by law, the cost of leasing an approved airport has been ascertained;

"AND WHEREAS, It has been ascertained and determined that the annual rental of an approved airport will be the sum of one-half mill of the taxable value of said city of Concordia:

"*Now, therefore, be it ordained by the governing body of the city of Concordia, Cloud County, Kansas:*

"SECTION 1. That the city of Concordia is hereby authorized to forthwith proceed to lease an approved airport, as more fully described in the proposal therefor on file with the city clerk.

"SEC. 2. That to pay for the cost thereof the proper officials of said city are hereby authorized, directed and it is made their duty to levy annually, at the time of making the levy for other taxes, a tax sufficient to pay the rental on said airport.

"SEC. 3. This ordinance shall be in force and take effect from and after its passage, approval and publication once in the official city paper.

"Passed the council this 7th day of April, 1930.

"Approved this 7th day of April, 1930. P. F. EDQUIST, *Mayor.*

"Attest: E. J. ALEXANDER, *City Clerk.*"

In 1921 the legislature passed an act to encourage and regulate navigation of the air by aircraft, creating a state aircraft board, and authorizing municipal corporations to acquire and maintain aviation fields. (Laws 1921, ch. 264.) Section 12 of the act reads as follows:

"That whenever in the opinion of the governing body in any city in the state of Kansas, the public safety, service and welfare can be advanced thereby, such governing body of such city may acquire by purchase or lease and maintain a municipal field for aviation purposes, and pay the expense of such purchase, lease or maintenance out of the general funds of the city. Such field may be used for the service of all aircraft and pilots desiring to use same." (R. S. 3-110.)

The public nature and importance of the municipal power thus granted were discussed in the case of *City of Wichita v. Clapp,* 125 Kan. 100, 263 Pac. 12.

In the case of *State, ex rel., v. City of Coffeyville,* 127 Kan. 663,

274 Pac. 258, it appeared that the city, having acquired an airport by lease, undertook to sublet. The syllabus reads:

"A city which has acquired a municipal aviation field or airport under authority of R. S. 3-110 has no corporate power to sublet such airport to a private individual, and neither the fairness of the terms of such proposed lease nor the fact that the city does not yet find it practicable to conduct and manage the airport itself will justify a disposition of it not authorized by statute." (¶ 2.)

The opinion was filed on February 9, 1929, and on March 13, 1929, the power found to be lacking in the Coffeyville case was expressly granted by the statute now under consideration. The title and section 4 of the statute read:

"AN ACT providing for the acquisition, improvement, equipping, maintenance and regulation of municipal airports and municipal fields for aviation purposes by cities of all classes, and providing for the issuance of bonds and levying of taxes therefor, and repealing section 3-110 of the Revised Statutes, 1923."

"SEC. 4. The governing body or park board, as the case may be, as hereinafter provided, may lease, assign or sublease the whole or any part of any such airport or municipal field for aviation purposes to one or more responsible persons, associations or corporations, jointly or severally, for any purpose directly or incidentally and necessarily required for the successful and proper operation of such property upon such terms as shall insure the impartial operation thereof, and rendition of services and conveniences thereon, on an equal basis, to all users of said airport or municipal field for aviation purposes." (Laws 1929, ch. 5.)

The mayor of Concordia contends the title of the act is not broad enough to embrace the provision for subletting, and so violates section 16 of article 2 of the constitution.

The resolution adopted by the city recites that the governing body deemed it not advisable for the city to operate its airport. It is quite likely the governing body of the city of Coffeyville reached the same conclusion, and in order to secure efficient operation desired to sublet to an expert. The statute was plainly amended by the act of 1929 to permit subletting as a means of securing successful and proper operation. While the body of the act uses the word "operation," and the title of the act uses the word "maintenance," the two words designate the same thing. An airport is not "operated" in the sense that a machine is operated or in the sense that a surgeon performs an operation. To operate an airport is to maintain it in a manner to effect accomplishment of results appropriate to the nature of the enterprise. To maintain an airport is to keep it in a state of efficiency for the furnishing of those facilities and

the rendition of those services which air transportation and communication demand. Therefore the court concludes the statute is not void because of defect of title.

Other objections to the statute reduce to this: The purpose to be accomplished is not a public purpose, and funds of the city raised by taxation are to be used to subsidize a private undertaking. The statute, only one section of which has been quoted, and the resolution and ordinance of the city of Concordia, plainly pertain to a public and not to a private airport. The contemplated airport is to be constructed, equipped and approved by the Department of Commerce, when the city acquires it. The city has no department of aërial navigation or airport officer, and the airport is to be conducted by a sublessee regarded by the city as competent. Police control is not surrendered, and the airport is to be to air transportation and communication what breakwaters, harbors, docks, wharves and other water frontage facilities are to commerce by the sea. There is no doubt that power to maintain such facilities may be conferred on municipal corporations. (44 C. J. 182.) The fact that air commerce has just emerged from early stages of its development, and the further fact that the city does not now commit itself for a longer period than five years, do not change the essential nature of the power. Therefore the court concludes the statute is constitutional and the proposed action of the city is not open to the objection urged against it.

The writ is allowed.